UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHRYN DIRCKS and BARRY DIRCKS, *individually and on behalf of their minor children*, T.D. and N.D., <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, *et al.*, <br><br> Defendants. | No. 1:21-cv-00451-JMS-MG |

## ORDER

Pending before the Court are two motions filed by *pro se* Plaintiffs Kathryn Dircks and Barry Dircks in this case involving over 100 defendants and asserting a plethora of claims ranging from alleged constitutional violations under 42 U.S.C. § 1983, conspiracy claims under 42 U.S.C. § 1985, and state-law claims of legal malpractice, defamation, and medical malpractice. [*See generally* Filing No. 107.] First is Plaintiffs' Motion to Amend their First Amended Complaint, [Filing No. 114], to anonymize certain nurses and social workers that they have sued. Second is Plaintiffs' Motion for a Protective Order, [Filing No. 94], to which certain Defendants have objected.

### I. BACKGROUND

**A. Plaintiffs' Federal Lawsuit**

Plaintiffs bring an assortment of wide-ranging claims in their 817-paragrah Complaint. [*See* Filing No. 107.] The starting point for the claims is Plaintiff Kathryn Dircks' March 4, 2019 involuntary commitment for mental health issues and a subsequent stand-off that occurred on that same date between law enforcement and Plaintiff Barry Dircks in connection with a wellness check

1

of Plaintiffs' minor children at Plaintiffs' home. Plaintiffs' minor children were temporarily removed from Plaintiffs' custody pursuant to proceedings in state court generally referred to as Child in Need of Services ("CHINS") proceedings and Juvenile Miscellaneous ("JM") proceedings. Kathryn Dircks remained committed to a treatment facility until March 22, 2019. Following the standoff and temporary removal of their children, Plaintiffs hired and fired lawyers and sent a multitude of public record requests to public entities.

Plaintiffs have filed suit in this Court against 107 defendants and assert no fewer than 25 distinct causes of action. [*See generally* Filing No. 107.] Plaintiffs assert numerous 42 U.S.C. § 1983 claims against officers and personnel from local police and fire departments, officers from the Boone County Sheriff's Office, and employees with the Department of Children Services in connection with the stand-off at Plaintiffs' home and the removal of their minor children. Plaintiffs also assert numerous conspiracy claims under 42 U.S.C. §§ 1985 and 1986. In the same Complaint, Plaintiffs bring state-law claims for legal malpractice, defamation, assault and battery, false imprisonment, and, most relevant here, medical malpractice. Plaintiffs have asserted medical malpractice claims against the hospital, treatment facility, and doctors, nurses, and social workers that Plaintiff Kathryn Dircks encountered during her involuntary commitment from March 4, 2019 through March 22, 2019 (the "Medical Malpractice Defendants").

**B.    The Indiana Malpractice Act**

In most instances, the Indiana Medical Malpractice Act (the "Act") requires that before a plaintiff may commence a medical malpractice action against a health care provider, the plaintiff must submit a proposed complaint to a medical review panel through the Indiana Department of Insurance and the panel must render an opinion. Ind. Code § 34-18-8-4. Medical review panels include three providers, two of whom must be from the individual

defendant's profession or specialty, and a non-voting attorney, who chairs the panel. Ind. Code §§ 34-18-10-3(a)-(b) & -10-8. The panel has "the sole duty" to provide an expert opinion on whether the evidence supports the conclusion that a provider "acted or failed to act within the appropriate standards of care." Ind. Code § 34-18-10-22. The opinion is "admissible as evidence in any action subsequently brought by the claimant" but "is not conclusive." Ind. Code § 34-18-10-23. The Act applies to claims filed in federal court, including the requirement that the plaintiff first file the proposed complaint with the medical review panel. *Hines v. Elkhart Gen. Hosp.*, 465 F. Supp. 421, 423-26 (N.D. Ind. 1979), *aff'd*, 603 F.2d 646 (7th Cir. 1979).

However, the Act provides an exception to the general rule that a lawsuit may not be filed until the medical review panel has finished its work. Section 7 of the Act allows a claimant to commence a malpractice lawsuit at the same time as claimant's proposed complaint is being considered by the medical review panel, but the lawsuit is limited as follows: "(1) [the] complaint filed in court may not contain any information that would allow a third party to identify the defendant; (2) [the] claimant is prohibited from pursuing the action; and (3) [the] court is prohibited from taking any action except setting a date for trial," dismissing the action for failure to prosecute, compelling discovery, or preliminarily determining an affirmative defense or issue of law. Ind. Code § 34-18-8-7. *See also Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 396 (Ind. Ct. App. 2016) ("The effect of this section is to allow a trial court to dismiss a proposed action at an early stage of the proceedings.").

Plaintiffs state that they filed a proposed complaint with the Indiana Department of Insurance on March 1, 2021 asserting claims against the Medical Malpractice Defendants. [Filing No. 114-1 at 72.]

## II. Plaintiffs' Motion for Leave to Amend Complaint [Filing No. 114]

Plaintiffs filed their original Complaint on February 26, 2021. [Filing No. 1.] Plaintiffs subsequently filed an Amended Complaint on June 14, 2021, adding additional allegations and causes of action. [Filing No. 107.] Plaintiffs now seek leave to file a Second Amended Complaint. [Filing No. 114.] In support of this request, Plaintiffs say that they just recently received notice from the Indiana Department of Insurance that certain nurses and social workers that Plaintiffs have sued are qualified providers under the Act. [Filing No. 114 at 1.] Plaintiffs seek to amend their Complaint to anonymize the names of these previously identified nurses and social workers and to make a handful of additional conforming and clarifying edits in light of the new information provided by the Indiana Department of Insurance. [Filing No. 114 at 2.]

As discussed above, the Act permits the filing of a court case while a proposed complaint is pending before the medical review panel only if the complaint omits information that would enable a third party to identify the medical malpractice defendant. Ind. Code § 34-18-8-7. This provision, along with Fed. R. Civ. P. 15(a)(2)'s mandate that leave should be freely given when justice so requires, warrants permitting the filing of proposed Second Amended Complaint.

Therefore, Plaintiffs' Motion for Leave to Amend the Amended Complaint, [Filing No. 114], is **GRANTED**. The Clerk is **DIRECTED** to file Plaintiffs' Second Amended Complaint, [Filing No. 114-1], instanter. Furthermore, because the Second Amended Complaint does not contain new substantive allegations, the deadline for all Defendants to respond to the Second Amended Complaint will remain **July 12, 2021** as set forth in this Court's prior Order, [Filing No. 106.] As set forth in the Prior Order, Plaintiffs shall respond to any Fed. R. Civ. P. 12 motions by no later than **August 9, 2021**, and Defendants shall file any replies in support of a Fed. R. Civ. P. 12 motion by no later than **August 16, 2021**. [Filing No. 106.]

### III. PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER [FILING NO. 94]

**A.     Standard**

Under Fed. R. Civ. P. 26(c), litigants are permitted to seek protective orders to guard against public disclosure of relevant and discoverable material. Courts have a duty to ensure that all proposed protective orders strike a proper balance between the public's interest in accessing non-confidential information and the parties' interest in maintaining confidentiality with regard to materials unsuited for public disclosure. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Before issuing the requested protective order, the Court must independently determine whether "good cause" exists to issue the order. *Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002); *see also*, *Citizens*, 178 F.3d at 944-45. When reviewing a proposed protective order, this Court must ensure that:

> (1) the information sought to be protected falls within a legitimate category of confidential information, (2) the information or category sought to be protected is properly described or demarcated, (3) the parties know the defining elements of the applicable category of confidentiality and will act in good faith in deciding which information qualifies thereunder, and (4) the protective order explicitly allows any party and any interested member of the public to challenge the sealing of particular documents.

*Pierson*, 205 F.R.D. at 647 (citing *Citizens*, 178 F.3d at 946). "The Court's evaluation of a proposed protective order need not be made on a document-by-document basis, if the Court is able to determine from the language of the proposed order that the parties know which category of information is legitimately confidential and that the parties are acting in good faith in deciding which documents should be protected." *Prater v. Weber Trucking Co., Inc.*, 2019 WL 2106644, at *1 (S.D. Ind. May 14, 2019). "Using qualifiers such as 'private,' 'confidential,' or 'proprietary' to describe the protected information, without more description, fails to assure the Court that the

parties will be making good faith and accurate designations of information." *Id.* (quoting *Pierson, 205 F.R.D. at 647*).

**B.      Analysis**

Plaintiffs ask the Count to enter a proposed protective order, [Filing No. 94-1]. Certain Defendants oppose Plaintiffs' proposed protective order. Defendant Jason Potts objects to the proposed protective order, [Filing No. 100]. Defendants Anonymous Doctor A and Anonymous Specialist A also object to Plaintiffs' proposal, [Filing No. 101], and submit their own proposed protective order, Filing No. 101-1]. The remaining Medical Malpractice Defendants joined in these objections and the proposal submitted by Anonymous Doctor A and Specialist A. [Filing No. 115; Filing No. 116.] Certain Medical Malpractice Defendants also joined in the objections filed by Defendant Potts. [Filing No. 103.] In response to some of the objections, Plaintiff filed a reply, [Filing No. 108], attaching a slightly revised proposed protective order, [Filing No. 108-1].

Plaintiffs' proposed protective order identifies the following information that needs protection from public view: (1) the filings and orders entered in the JM and CHINS cases and "any written documentation generated as part of" the JM and CHINS cases; (2) video footage of an interview of Plaintiffs' minor child, T.D.; (3) "Plaintiffs' medical and mental health records"; and (4) "Plaintiffs' tax returns . . . and any other financial records utilized to prove loss of income." [Filing No. 108-1 at 2-3.]

The Court starts with the Uniform Stipulated Protective Order as a backdrop. *Available at* https://www.insd.uscourts.gov/forms/uniform-protective-order (last accessed June 29, 2021). Plaintiffs used the Court's two-tiered (with "Confidential" and "Attorneys' Eyes Only" ("AEO") designations) Uniform Stipulated Protective Order with the following changes:

- Under Section V(B) concerning who may access information marked "Confidential," Plaintiffs added the Indiana Department of Insurance, the medical review panel chair, and

- the medical review panel members who may be called to serve regarding Plaintiffs' proposed complaint currently pending before the Indiana Department of Insurance under Claim No. 1021672, as well as any peer review committee members if such a committee is formed under Ind. Code § 34-30-15-1, *et seq.*

- Under Section V(C) concerning who may access information marked AEO, Plaintiffs deleted the sentence that enables parties fill-in-the blank to identify specific representatives who may access AEO information. Plaintiffs also deleted a fill-in-the-blank that further limits the terms under which an expert or consultant may review AEO information, envisioned to be used in instances in which an expert or consultant "may have been associated" with a competitor of a party.

[Filing No. 94 at 3.]

### 1. The Use of the AEO Designation

Plaintiffs have indicated that they would designate certain medical and mental health records as Confidential as to the Medical Malpractice Defendants but then designate the same records as AEO as to other Defendants, such as the law enforcement and firefighter Defendants. Defendant Potts objects to Plaintiffs' potential use of a protective order in this fashion. [Filing No. 100 at 1.]

For their part, the Medical Malpractice Defendants object to the inclusion of an AEO tier at all "unless there was an understanding as to what documents would be encompassed within that provision." [Filing No. 101 at 3.] The Medical Malpractice Defendants note that by filing malpractice claims, Plaintiffs have placed their physical and mental conditions at issue and cannot selectively attempt to suppress certain information. [Filing No. 101 at 2.] The Medical Malpractice Defendants are also concerned that the AEO designation will be "used offensively by Plaintiffs to prevent the attorneys for the Medical Malpractice Defendants from sharing Plaintiffs' medical records with their clients; providing those medical records to expert witnesses; and providing those medical records … to the medical review panel members." [Filing No. 101 at 3.]

7

Plaintiffs respond by noting that their proposed protective order already includes expert witnesses as among those eligible to receive AEO information, [Filing No. 108 and 5], and proposes adding the medical review panel and peer review committee members as individuals eligible to receive AEO information. [Filing No. 108 at 5].

To start, "Seventh Circuit case law simply does not allow for an open-ended [AEO] category, the scope of which is to be decided on the whim of counsel." *Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*, 2019 WL 5963644, at * 1 (N.D. Ill. Nov. 13, 2019) (citing *Citizens*, 178 F.3d at 945). "Although two-tiered protective orders contemplating that some documents will be produced with a heightened AEO designation are not uncommon, the AEO designation should only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (internal quotation marks omitted). Furthermore, the AEO designation "must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Id.*

Although not expressly stated in Plaintiffs' proposed protective order, Plaintiffs have represented that they intend to mark their "medical and mental health records" as AEO "when released to [non-Medical Malpractice] defendants." [*See* Filing No. 101-2 at 6.] A plaintiff who seeks recovery for medical malpractice claims has placed his or her mental or physical condition in issue and thus waives privacy expectations and any patient-physician privilege. *See Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990) (citing *Collins v. Bair*, 268 N.E.2d 95 (1971)). But the

expectation and privilege are waived "only to those matters causally and historically related to the condition put in issue and which have a direct medical relevance to the claim, counterclaim or defense made." *Id.* (quoting *Collins*, 268 N.E.2d at 101). Furthermore, courts have been clear that "a party may surrender the psychotherapist-patient privilege" available under federal law "by affirmatively placing his or her psychological state at issue in the suit." *Johnson v. Rogers*, 2018 WL 10246993, at *3 (S.D. Ind. Apr. 20, 2018).

The Court finds that Plaintiffs' expectation of privacy in their medical and mental health records has been diminished by the filing of this lawsuit in which they allege (in extensive detail) claims of medical malpractice. Furthermore, Plaintiffs have directly placed their psychological states at issue by alleging law enforcement and child services responded with excessive force when Barry Dircks refused to produce the children for a welfare assessment, [*see, e.g.*, Filing No. 107 at 74], that Kathryn Dircks was wrongfully subject to emergency involuntary detention as a mentally ill person, [Filing No. 107 at 97], and that certain Defendants conspired with one another in violation of 42 U.S.C. § 1985 "to make Kathryn [Dircks] appear mentally incompetent in order to obstruct justice in the JM and CHINS cases," [Filing No. 107 at 88]. Discovery for the Defendants would become more difficult and expensive if Plaintiffs were permitted to designate their medical and mental health records as AEO in this case with extensive claims and allegations relating to Plaintiffs' mental and physical well-being. For these reasons, the Court denies Plaintiffs' Motion for Protective Order to the extent it seeks an AEO designation for their medical and mental health records.

As no party has identified another category of information for AEO designation, the Court will not include an AEO tier in the conforming Protective Order that will be issued concurrently with this Order.

## 2. The Medical Review Panel's Access to Information

The Medical Malpractice Defendants' objections to Plaintiffs' proposed protective order also focus on ensuring that any information produced in this case may be shared with the Indiana Department of Insurance and the medical review panel. [Filing No. 101 at 1.] In particular, the Medical Malpractice Defendants ask that the protective order not apply at all to the medical review panel proceedings because "the medical review panel process is broad and the panel members may consult with other sources in rendering their decision." [Filing No. 101 at 4.] The Medical Malpractice Defendants propose adding the following language to the protective order:

> In addition to filing this action in U.S. District Court, Plaintiffs have also filed a Proposed Complaint for Medical Malpractice with the Indiana Department of Insurance, Claim Number 1021672. Nothing in this Stipulated Protective Order applies to the proceedings before the Indiana Department of Insurance. This Stipulated Protective Order does not prevent the Parties and the Parties' attorneys from providing evidence to the chair of the medical review panel, the medical review panel members, and the Indiana Department of Insurance as permitted under the Indiana Code. Nothing in this Stipulated Protective Order prevents the members of the medical review panel from discussing this case and the treatment rendered to Plaintiffs among themselves, with the panel chair, and with the Parties and the Parties' attorneys during the meeting of the medical review panel. This Stipulated Protective Order does not prevent the panel members from discussing Plaintiffs' treatment and medical information with other medical authorities as permitted by I.C. 34-18-10-21. This Stipulated Protective Order also does not prevent the Parties and the Parties' attorneys (including the Parties' attorneys' employees) from discussing this case with the panel members after issuance of the medical review panel opinion and from calling the members of the medical review panel as witnesses under I.C. 34-18-10-23.

[Filing No. 101-1 at 3-4.]

Plaintiffs respond by objecting to the Medical Malpractice Defendants' proposal that nothing in the protective order shall apply to the proceedings before the Indiana Department of Insurance as being too broad. [Filing No. 108 at 4.] Plaintiffs propose adding the Indiana Department of Insurance and the medical review panel to the list of individuals entitled to receive

10

AEO materials, [Filing No. 108 at 5], a point now moot with the Court's decision in this Order denying an AEO tier.

No order issued by this Court, including a protective order, overrides the information otherwise available to the medical review panel under Indiana law. Under the Act, the panel (a) "has the right and duty to request all necessary information"; (b) "may consult with medical authorities"; and (c) "may examine reports of other health care providers necessary to fully inform the panel regarding the issue to be decided." Ind. Code § 34-18-10-21. That section further provides that "[b]oth parties shall have full access to any material submitted to the panel." *Id.* The Act also provides that the parties may submit certain kinds of evidence to the panel.

> (a) The evidence in written form to be considered by the medical review panel shall be promptly submitted by the respective parties.
>
> (b) The evidence may consist of medical charts, x-rays, lab tests, excerpts of treatises, depositions of witnesses including parties, and any other form of evidence allowable by the medical review panel.
>
> (c) Depositions of parties and witnesses may be taken before the convening of the panel.

Ind. Code § 34-18-10-17. Additionally, the Act provides that "[a] report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law. However, the expert opinion is not conclusive, and either party, at the party's cost, has the right to call any member of the medical review panel as a witness." Ind. Code § 34-18-10-23. Thus, the parties have obligations to provide information directly to the medical review panel and to each other regardless of the existence of this lawsuit.

To be abundantly clear that the protective order entered in this case is not to be used to impede the work of the medical review panel, the Court will include Plaintiffs' proposed language identifying the Indiana Department of Insurance, the medical review panel, and any peer review

committee members as individuals and entities entitled to receive information designated as Confidential. The Court will further include the proceeding pending before the Indiana Department of Insurance in Claim Number 1021672 as a permitted use of information designated as "Confidential" as that matter is intrinsically tied to this lawsuit because the Court cannot, with a few exceptions, take any action on the medical malpractice claims until the medical review panel's work is complete on Claim Number 1021672. The Court further cautions the parties that any tactic to keep information from the medical review panel, impede the panel's work, or duplicate discovery efforts in this action and the complaint pending before the medical review board will not be viewed favorably by the Court.

### 3. Order to be Bound by Law

The Medical Malpractice Defendants also ask that a protective order include language in which the parties agree that the medical review panel members are immune from suit under Ind. Code § 34-18-10-24, and that the parties may discuss the case with panel members and call them as witnesses as provided in Ind. Code § 34-18-10-23. [Filing No. 101 at 4.] Specifically, the Medical Malpractice Defendants ask the Court to include the following language in a protective order:

> This Stipulated Protective Order also does not prevent the Parties and the Parties' attorneys (including the Parties' attorneys' employees) from discussing this case with the panel members after issuance of the medical review panel opinion and from calling the members of the medical review panel as witnesses under I.C. 34-18-10-23. All Parties to this agreement acknowledge that the members of the medical review panel have absolute immunity from civil liability "for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by [the Indiana Medical Malpractice Act]".

[Filing No. 101-1 at 4.] Plaintiffs respond that the inclusion of this language is unnecessary because their proposed protective order "does not take away the rights enumerated in" Ind. Code §§ 34-18-10-23 and -24. [Filing No. 108 at 5-6.]

The Court agrees with Plaintiffs that this language is unnecessary. The parties are bound by Indiana law governing medical malpractice claims. An "agreement" or "order" to be bound by the law is unnecessary.

### 4. Non-Waiver of Privileges

The Medical Malpractice Defendants ask that a protective order include language stating that the protective order "does not affect or constitute a waiver of privileges that apply to this matter." [Filing No. 101 at 5.] They propose including the following language in the protective order:

> In addition, said Protective Order Agreement does not affect or constitute a waiver of Defendants' objections and right to withhold or redact information protected from disclosure under the laws of Indiana, by the attorney-client privilege, work product doctrine, or other applicable legal privilege, including but not limited to, Quality Assurance materials protected by the Peer Review Privilege pursuant to [Ind. Code] § 34-30-15-1, *et seq.*

[Filing No. 101-1 at 8.]

In response, Plaintiffs point out that Section V(E) of the Court's Uniform Protective Order and Plaintiffs' proposed protective order already contains the following language:

> Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Order, nor the failure to object to any designation, will constitute a waiver of any party's claim or defense in this action or any other action or proceeding, including but not limited to a claim or defense that any designated information is or is not confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

[Filing No. 108-1 at 8.] Plaintiffs say this provision is sufficient to address the Medical Malpractice Defendants' concerns and thus their proposed language is unnecessary. [Filing No. 108 at 6.]

The Court agrees with Plaintiffs that the Medical Malpractice Defendants' proposed language is unnecessary. The entry of a protective order by the Court will not diminish a party's ability to assert applicable privileges or objections under relevant law.

**5.     Exhibit A**

Defendant Potts objects to Plaintiffs' use of the Court's Uniform Protective Order in proposed Section V(D). [Filing No. 100 at 2-3.] Under the Uniform Protective Order, non-parties receiving information designated as Confidential must sign an acknowledgment attached to the Uniform Protective Order as "Exhibit A" whereby the non-party agrees to be bound by the terms of the protective order. Section V(D) then provides a mechanism for parties to review signed Exhibit A's.

> D.     Review of Witness Acknowledgments:  At any time and for any purpose, including to monitor compliance with the terms hereof, any Designating Party may demand to review all copies of Exhibit A in any Receiving Party's possession. The Receiving Party must, within 3 business days of the demand, provide all such copies to the Designating Party making the demand. Notwithstanding the foregoing, if the Receiving Party has retained an expert whose identity has not yet been disclosed to the Designating Party, the Receiving Party may generically identify how many acknowledgments that it has in its possession attributable to non-disclosed experts, whose acknowledgements must later be provided contemporaneously with any reports issued by one or more of said experts. If a Receiving Party is not required to disclose the identity of any consulting experts, it may not be compelled to produce any acknowledgments from those experts to the Designating Party. However, if the Designating Party provides to the Court evidence of breach of this Order via unauthorized leak of designated information, the Court may require an *in camera* production of all acknowledgments held by a Receiving Party in order to determine breach and consider enforcement of this Order.

[Filing No. 108-1 at 7-8.] Defendant Potts objects to this section because he does not want to be required to provide copies of signed Exhibit A's "for other representatives that would neither be called to testify at trial nor disclosed as witnesses. Rather, said representatives of Defendant would be used to assist in developing work product, which would be non-discoverable." [Filing No. 100 at 2.] Defendant Potts proposes that the individuals for whom producing an Exhibit A is not

required be expanded to include "investigator" and "consultant representative," in addition to consulting experts. [Filing No. 119 at 3.] Defendant Potts also says that he "is amendable to the language contained in this Court's uniform protective order and would have no objection to the same," which is curious because Plaintiffs' proposed protective order contains the language from the Court's Uniform Protective Order. [Filing No. 119 at 3.]

The Court is unable to divine Defendant Potts' exact concern with the Court's Uniform Protective Order language from his briefing. He seems to suggest that his concerns center on the work-product doctrine and the use of consulting experts and appears to ask the Court to expand the protection afforded to non-testifying experts under Fed. R. Civ. P. 26(b)(4)(D). The Court finds that its uniform order language adequately addresses any issues with respect to non-testifying experts and will include the language from its uniform order.

With these modifications, the Court finds that good cause exists to provide protection for the following categories of information in the discovery process: information about the minor children and related JM and CHINS proceedings, including interviews conducted of the minor children; medical and mental health records; and income tax returns and sensitive financial data. Therefore, Plaintiffs' Motion for a Protective Order, [Filing No. 94], is **GRANTED IN PART** and **DENIED IN PART**.

### IV. CONCLUSION

Plaintiffs' Motion for Leave to Amend the Amended Complaint, [114], is **GRANTED**. The Clerk is **DIRECTED** to file Plaintiffs' Second Amended Complaint, [114-1], instanter. Because the Second Amended Complaint does not contain new substantive allegations, the deadline for all Defendants to respond to the Second Amended Complaint will remain **July 12,**

**2021** as set forth in this Court's prior Order, [106]. All deadlines set in that Order, [106], remain in effect.

Plaintiffs' Motion for a Protective Order, [94], is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order. The Court will enter a Protective Order that conforms with the rulings contained in this Order.

Date: 7/1/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

KATHRYN DIRCKS
7650 S. 50 E.
Lebanon, IN 46052

BARRY DIRCKS
7650 S. 50 E.
Lebanon, IN 46052